IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. PETSMART, INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:17-cv-00361-CVE-JFJ ) **JURY TRIAL DEMANDED** ) |
| 1. DANCOR CONSTRUCTION, INC., and 2. DANIEL J. POLICICCHIO, Sr. | ) **Per LCvR3.1**: This action is not ) Related to any previously filed cases ) in this court |
| Defendants. | ) |

## AMENDED COMPLAINT

Plaintiff, PetSmart, Inc., in support of its Amended Complaint against Defendant, Dancor Construction, Inc., alleges as follows:

### PARTIES

1. This is an action for breach of contract, contractual indemnification, and fraud arising out of a construction project at a PetSmart retail store located at the North East corner of 101st St. and S. Memorial Dr. in Tulsa Oklahoma ("PetSmart Store").

2. A true and correct copy of the contract between PetSmart and Dancor Construction, Inc. ("The Contract") is attached hereto and incorporated by reference as Exhibit 1.

3. Plaintiff, PetSmart, Inc. ("PetSmart") is an Arizona corporation with its principal place of business and its headquarters located in Phoenix, Arizona.

4. Defendant, Dancor Construction, Inc. ("Dancor") is a Florida corporation with its principal place of business and headquarters located in Santa Rosa Beach, Florida.

5. Defendant, Daniel J. Policicchio, Sr. ("Policicchio") is the President and a Director of Dancor Construction, Inc. and is a citizen of the State of Florida.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action based on diversity of citizenship under 28 U.S.C. §1332(a)(1) because this case is a civil action between citizens of different States. Additionally, the matter in controversy exceeds $75,000, exclusive of costs and interest.

7. Venue is proper in this judicial district under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district.

8. This Court has personal jurisdiction over Defendants Dancor and Policicchio, consistent with the United States Constitution's requirements of Due Process because: Dancor's and Policicchio's actions giving rise to this lawsuit took place within the State of Oklahoma and injured Plaintiff within the State of Oklahoma; and Dancor and Policicchio availed themselves of the laws of Oklahoma when Dancor contracted with PetSmart and with multiple Oklahoma subcontractors to perform work on the subject PetSmart Store in Tulsa, Oklahoma.

## COUNT I-BREACH OF CONTRACT

9. Plaintiff incorporates by reference paragraphs 1-8.

10. PetSmart and Dancor entered into The Contract to construct the PetSmart Retail Store referenced in paragraph 1, *supra*. (Exhibit 1).

11. Under the terms of The Contract, PetSmart agreed to pay Dancor a total of

2

One Million Two Hundred Sixty-Nine Thousand Three Hundred Ninety-Seven Dollars ($1,269,397.00) to be paid periodically to complete all work, including the work of any subcontractors, materials, and other requirements needed to complete the entire project of constructing The Store. (Ex. 1, Section 4-"The Contract Sum", Section 5-"Progress Payments").

12. PetSmart performed all conditions precedent to Dancor's final and complete performance under The Contract.

13. The Contract required Dancor to pay its subcontractors from the foregoing Contract Sum within set payment periods. (Ex. 1, Sections 4-"The Contract Sum"; Section 5-"Progress Payments"; and Section 6-"Final Application for Payment").

14. Dancor failed to pay its subcontractors as required by The Contract, and failed to provide bonds sufficient to remove any lien rights of such subcontractors, as Dancor contracted to do. (Ex. 1, Section 5-"Progress Payments" and 6-"Final Application for Payment").

15. As a result of Dancor's breach of The Contract, Dancor's subcontractors filed liens affecting the property rights of PetSmart and PetSmart's lessor in amounts in excess of $490,000.00 (Four hundred, ninety-thousand dollars).

16. PetSmart's lease requires PetSmart to remove any liens on PetSmart's lessor's property within thirty (30) days of receipt of notice of such liens, after which, the lease permits PetSmart's lessor to pay the liens and obtain reimbursement from PetSmart.

17. As a result of Dancor's breach of contract, PetSmart was required to obtain corporate surety bonds at a total penal sum of $638,000.00 (six hundred thirty-eight thousand dollars) to discharge the foregoing liens.

18. To date, PetSmart has paid $196,979.89 (one hundred ninety-six thousand nine hundred seventy-nine and 89/100 dollars) to pay certain lienholders that filed liens against the PetSmart Store as a result of Dancor's failure to pay its subcontractors—in breach of Dancor's contract with PetSmart.

19. The Contract further provides that Dancor was to complete all construction for The Store by December 26, 2016. (Ex. 1, Section 3- "Construction Start Date and Construction Completion Date").

20. Dancor did not complete construction of The Store by December 26, 2016 as contracted, and The Store remains uncompleted as of the date of filing of this Amended Complaint.

21. The Contract provides that: "For each day following the twentieth day (20th) after the Substantial Completion Date that Contractor fails to complete all items in the Punch List in their entirety, the Contractor [Dancor] shall be obligated to pay Client [PetSmart] the sum of Five Hundred Dollars ($500.00) per day as reasonable liquidated damages, and not as a penalty ("Liquidated Damages") to reimburse client for the additional administration required of its personnel and impaired or lost business opportunities caused by Contractor's delay." (Ex. 1, Section 6-"Final Application for Payment").

22. In addition to the damages identified above, and as a result of Dancor's

failure to complete all "Punch List" items since January 16, 2017 (20 days after the final completion date of December 26, 2016), PetSmart has incurred $218,000.00 (two hundred seven thousand 00/100 dollars) in liquidated damages as of the date of filing this Amended Complaint on March 27, 2018.

COUNT II-CONTRACTUAL INDEMNIFICATION

23. Plaintiff incorporates by reference paragraphs 1-22.

24. The Contract states that: "Contractor [Dancor] shall indemnify, protect, defend and hold harmless Client [PetSmart], Client's lessor at the Project and any fee owner of the Project…from and against any and all claims, demands, losses, liabilities, damages, costs and expenses…arising out of…[a]ny breach or default by Contractor of any obligation of Contractor…under this Agreement. (Ex. 1, Section 9.1-"Indemnification").

25. The Contract further states that: "Contractor agrees to defend, at Contractor's sole costs and expense, each Indemnified Person in any action or proceeding arising out of any such Claims, by counsel selected by the Indemnified Person, and to pay promptly all costs and expenses arising in connection with such defense, including without limitation, attorney's, consultants' and expert witness fees, as they become due." (Ex. 1, Section 9.1-"Indemnification").

26. As a result of Dancor's breach of The Contract and resulting liens filed by the subcontractors identified herein, PetSmart has incurred and will in the future incur substantial damages. These damages will include: attorney fees and costs; costs or fees to obtain and file corporate surety bonds to discharge the liens; costs and fees to litigate

liens and lawsuits filed by Dancor's subcontractors; costs and expenses to complete construction of The PetSmart Store; and costs and attorney fees to enforce the terms of The Contract.

### COUNT III-FRAUD/ NONDISCLOSURE OR CONCEALMENT-DANCOR

27. Plaintiff incorporates by reference paragraphs 1-26.

28. Over the course of the construction, Dancor, through its officers, agents, and employees, recklessly and intentionally made material false statements of fact to PetSmart by certifying to PetSmart that Dancor had made certain payments to Dancor's subcontractors, including:

   a. On December 1, 2016 Dancor falsely certified to PetSmart that Dancor had paid certain amounts to subcontractors that Dancor had in fact not paid. (See 12-1-16 certification regarding payments, Ex. 2).

   b. On December 27, 2016 Dancor falsely certified to PetSmart that Dancor had paid certain amounts to subcontractors that Dancor had in fact not paid. (See 12-27-16 certification regarding payments, Ex. 3).

   c. On January 31, 2017 Dancor falsely certified to PetSmart that Dancor had paid certain amounts to subcontractors that Dancor had in fact not paid. (See 1-31-17 certification regarding payments, Ex. 4).

29. Dancor knew that the foregoing certifications it made to PetSmart regarding Dancor's payment of subcontractors were false, because Dancor knew that Dancor had not made the represented payments to its subcontractors.

30. Dancor made the foregoing material, false representations and statements to PetSmart with the intention of causing PetSmart to make additional periodic payments to Dancor, conditioned on the intentionally induced and erroneous belief that Dancor had

and was using those funds to pay its subcontractors. However, Dancor knew that Dancor had not and was not paying its subcontractors, as falsely represented to PetSmart.

31. In making the foregoing false certifications and statements, Dancor perpetrated a fraud on PetSmart.

32. PetSmart detrimentally relied on Dancor's false certifications to PetSmart that Dancor was paying its subcontractors, and because of that detrimental reliance, PetSmart made and continued to make multiple additional payments to Dancor, all as to which Dancor was not entitled because Dancor had not paid its subcontractors, as falsely represented to PetSmart. PetSmart suffered injury and damages as a result of its said detrimental reliance on Dancor's false representations and false statements.

33. Dancor acted intentionally and with malice toward PetSmart by making false certifications to PetSmart that were intended to cause PetSmart to pay Dancor hundreds of thousands of dollars to Dancor to which Dancor knew that Dancor was not entitled, and which Dancor kept for its own unjust enrichment.

34. By virtue of the foregoing, Dancor also: concealed or failed to disclose past or present material facts to PetSmart that it had a duty to disclose; it did so with the intent of creating a false impression of the actual facts in the mind of PetSmart; it concealed or failed to disclose those material facts to PetSmart with the intention that it (said concealment or nondisclosure) should be acted upon by PetSmart; PetSmart acted in reliance thereon and thereby suffered injury and damages.

35. Dancor unjustly enriched itself at the expense of PetSmart, because of the funds it derived by virtue of its above described false statements, misrepresentations, nondisclosures, or concealments Dancor made to PetSmart.

COUNT IV-FRAUD/ NONDISCLOSURE OR CONCEALMENT-POLICICCHIO

36. Plaintiff incorporates by reference paragraphs 1-35.

37. Over the course of the construction, Policicchio personally, recklessly and intentionally made material false statements of fact to PetSmart by certifying to PetSmart that Dancor had made certain payments to Dancor's subcontractors, including:

    a. On December 1, 2016 Policicchio falsely certified to PetSmart that Dancor had paid certain amounts to subcontractors that Dancor had in fact not paid. (See 12-1-16 certification regarding payments, Ex. 2).

    b. On December 27, 2016 Policicchio falsely certified to PetSmart that Dancor had paid certain amounts to subcontractors that Dancor had in fact not paid. (See 12-27-16 certification regarding payments, Ex. 3).

    c. On January 31, 2017 Policicchio falsely certified to PetSmart that Dancor had paid certain amounts to subcontractors that Dancor had in fact not paid. (See 1-31-17 certification regarding payments, Ex. 4).

38. Policicchio knew that the foregoing certifications it made to PetSmart regarding Dancor's payment of subcontractors were false, because Policicchio knew that Dancor had not made the represented payments to its subcontractors.

39. Policicchio personally made the foregoing material, false representations and statements to PetSmart with the intention of causing PetSmart to make additional periodic payments to Dancor, conditioned on the intentionally induced and erroneous belief that Dancor had and was using those funds to pay its subcontractors. However,

Policicchio knew that Dancor had not and was not paying its subcontractors, as falsely represented to PetSmart.

40. In personally making the foregoing false certifications and statements, Policicchio personally used the defendant corporation, Dancor Construction, Inc. to perpetrate a fraud on PetSmart.

41. PetSmart detrimentally relied on Policicchio's false certifications to PetSmart that Dancor was paying its subcontractors, and because of that detrimental reliance, PetSmart made and continued to make multiple additional payments to Dancor, all as to which Dancor was not entitled because Dancor had not paid its subcontractors, as falsely represented to PetSmart. PetSmart suffered injury and damages as a result of its said detrimental reliance on Policicchio's false representations and false statements.

42. Policicchio acted intentionally and with malice toward PetSmart by making false certifications to PetSmart that were intended to cause PetSmart to pay Dancor hundreds of thousands of dollars to Dancor to which Policicchio knew that Dancor was not entitled, and which Dancor kept for its own unjust enrichment.

43. By virtue of the foregoing, Policicchio also: concealed or failed to disclose past or present material facts to PetSmart that he had a duty to disclose; he did so with the intent of creating a false impression of the actual facts in the mind of PetSmart; he concealed or failed to disclose those material facts to PetSmart with the intention that it (said concealment or nondisclosure) should be acted upon by PetSmart; PetSmart acted in reliance thereon and thereby suffered injury and damages.

44. Policicchio is President, a Director of, and major shareholder of Dancor. He derives substantial financial benefit from the financial success of Dancor.

45. Policicchio unjustly enriched himself at the expense of PetSmart, because of the funds he derived by virtue of his above described false statements, misrepresentations, nondisclosures, or concealments Policicchio made to PetSmart.

COUNT V-BREACH OF CONTRACT/OPEN ACCOUNT -ADVANCED

46. Plaintiff incorporates by reference paragraphs 1-45.

47. Advanced Fixtures, Inc. ("Advanced") entered into a Contractor-Subcontractor Agreement with Dancor whereby Advanced agreed to furnish materials and/or related labor and equipment for the PetSmart store.

48. Advanced fully performed its work under its subcontract with Dancor.

49. Despite Advanced's full performance, Dancor failed to pay Advanced the full amount identified in Advanced's subcontract with Dancor for the materials and/or labor provided by Advanced.

50. As a result of the debt/open account caused by Dancor's refusal to pay the remaining balance due to Advanced, Dancor owes Advanced for the unpaid sums due Advanced under its subcontract with Dancor. Advanced filed a materialmen's lien on the PetSmart property at issue for the unpaid fees it was due from Dancor, thereby legally encumbering said property.

51. PetSmart paid $60,012.71 (Sixty thousand, twelve and 71/100 dollars) to release Advanced's lien on PetSmart's property interest in the PetSmart Store.

52. Advanced assigned to PetSmart $60,012.71 of any and all of its claims it might have against Dancor, and PetSmart is entitled to recover said sum from Dancor.

53. Pursuant to 12 O.S. § 936, PetSmart is entitled to a reasonable attorney fee for PetSmart's prosecution of the foregoing claim that it has been assigned by Advanced.

### COUNT VI-BREACH OF CONTRACT/OPEN ACCOUNT –RLS

54. Plaintiff incorporates by reference paragraphs 1-53.

55. RLS Construction Inc. ("RLS") entered into a Contractor-Subcontractor Agreement with Dancor whereby RLS agreed to furnish materials and/or related labor and equipment for the PetSmart store.

56. RLS fully performed its work under its subcontract with Dancor.

57. Despite RLS's full performance, Dancor failed to pay RLS the full amount identified in RLS's subcontract with Dancor for the materials and/or labor provided by RLS.

58. As a result of the debt/open account caused by Dancor's refusal to pay the remaining balance due to RLS, Dancor owes RLS for the unpaid sums due RLS under its subcontract with Dancor. RLS filed a materialmen's lien on the PetSmart property at issue for the unpaid fees it was due from Dancor, thereby legally encumbering said property.

59. PetSmart paid $45,000.00 (forty thousand and 00/100 dollars) to release RLS's lien on PetSmart's property interest in the PetSmart Store.

60. RLS assigned to PetSmart $45,000.00 of any and all of its claims it might have against Dancor, and PetSmart is entitled to recover said sum from Dancor.

61.     Pursuant to 12 O.S. § 936, PetSmart is entitled to a reasonable attorney fee for PetSmart's prosecution of the foregoing claim that it has been assigned by RLS.

## COUNT VII-BREACH OF CONTRACT/OPEN ACCOUNT –DEMOLITION

62.     Plaintiff incorporates by reference paragraphs 1-61.

63.     Mark Wofford, d/b/a Demolition Wrecking ("Demolition") entered into a Contractor-Subcontractor Agreement with Dancor whereby Demolition agreed to furnish materials and/or related labor and equipment for the PetSmart store.

64.     Demolition fully performed its work under its subcontract with Dancor.

65.     Despite Demolition's full performance, Dancor failed to pay Demolition the full amount identified in Demolition's subcontract with Dancor for the materials and/or labor provided by Demolition.

66.     As a result of the debt/open account caused by Dancor's refusal to pay the remaining balance due to Demolition, Dancor owes Demolition for the unpaid sums due Demolition under its subcontract with Dancor. Demolition filed a materialmen's lien on the PetSmart property at issue for the unpaid fees it was due from Dancor, thereby legally encumbering said property.

67.     PetSmart paid $32,703.50 (thirty-two thousand seven hundred three and 50/100 dollars) to release Demolition's lien on PetSmart's property interest in the PetSmart Store.

68.     Demolition assigned to PetSmart $32,703.50 of any and all of its claims it might have against Dancor, and PetSmart is entitled to recover said sum from Dancor.

69.     Pursuant to 12 O.S. § 936, PetSmart is entitled to a reasonable attorney fee

for PetSmart's prosecution of the foregoing claim that it has been assigned by Demolition.

### COUNT VIII-BREACH OF CONTRACT/OPEN ACCOUNT –DaVco

70. Plaintiff incorporates by reference paragraphs 1-69.

71. DaVco Mechanical Contractors, Inc. ("DaVco") entered into a Contractor-Subcontractor Agreement with Dancor whereby DaVco agreed to furnish materials and/or related labor and equipment for the PetSmart store.

72. DaVco fully performed its work under its subcontract with Dancor.

73. Despite DaVco's full performance, Dancor failed to pay DaVco the full amount identified in DaVco's subcontract with Dancor for the materials and/or labor provided by DaVco.

74. As a result of the debt/open account caused by Dancor's refusal to pay the remaining balance due to DaVco, Dancor owes DaVco for the unpaid sums due DaVco under its subcontract with Dancor. DaVco filed a materialmen's lien on the PetSmart property at issue for the unpaid fees it was due from Dancor, thereby legally encumbering said property.

75. PetSmart paid $32,565.00 (thirty two thousand five hundred sixty five and 00/100 dollars) to release DaVco's lien on PetSmart's property interest in the PetSmart Store.

76. DaVco assigned to PetSmart $32,565.00 of any and all of its claims it might have against Dancor, and PetSmart is entitled to recover said sum from Dancor.

77. Pursuant to 12 O.S. § 936, PetSmart is entitled to a reasonable attorney fee for PetSmart's prosecution of the foregoing claim that it has been assigned by DaVco.

## COUNT IX-BREACH OF CONTRACT/OPEN ACCOUNT –BRAZEAL

78. Plaintiff incorporates by reference paragraphs 1-77.

79. Brazeal Masonry, Inc. ("Brazeal") entered into a Contractor-Subcontractor Agreement with Dancor whereby Brazeal agreed to furnish materials and/or related labor and equipment for the PetSmart store.

80. Brazeal fully performed its work under its subcontract with Dancor.

81. Despite Brazeal's full performance, Dancor failed to pay Brazeal the full amount identified in Brazeal's subcontract with Dancor for the materials and/or labor provided by Brazeal.

82. As a result of the debt/open account caused by Dancor's refusal to pay the remaining balance due to Brazeal, Dancor owes Brazeal for the unpaid sums due Brazeal under its subcontract with Dancor. Brazeal filed a materialmen's lien on the PetSmart property at issue for the unpaid fees it was due from Dancor, thereby legally encumbering said property.

83. PetSmart paid $9,999.00 (nine thousand nine hundred ninety-nine and 00/100 dollars) to release Brazeal's lien on PetSmart's property interest in the PetSmart Store.

84. Brazeal assigned to PetSmart $9,999.00 of any and all of its claims it might have against Dancor, and PetSmart is entitled to recover said sum from Dancor.

85. Pursuant to 12 O.S. § 936, PetSmart is entitled to a reasonable attorney fee for PetSmart's prosecution of the foregoing claim that it has been assigned by Brazeal.

## COUNT X-BREACH OF CONTRACT/OPEN ACCOUNT-TULSA TILE GUYS

86. Plaintiff incorporates by reference paragraphs 1-85.

87. Jeramiah Richardson, d/b/a Tulsa Tile Guys ("Tulsa Tile Guys") entered into a Contractor-Subcontractor Agreement with Dancor whereby Tulsa Tile Guys agreed to furnish materials and/or related labor and equipment for the PetSmart store.

88. Tulsa Tile Guys fully performed its work under its subcontract with Dancor.

89. Despite Tulsa Tile Guys' full performance, Dancor failed to pay Tulsa Tile Guys the full amount identified in Tulsa Tile Guys' subcontract with Dancor for the materials and/or labor provided by Tulsa Tile Guys.

90. As a result of the debt/open account caused by Dancor's refusal to pay the remaining balance due to Tulsa Tile Guys, Dancor owes Tulsa Tile Guys for the unpaid sums due Tulsa Tile Guys under its subcontract with Dancor. Tulsa Tile Guys filed a materialmen's lien on the PetSmart property at issue for the unpaid fees it was due from Dancor, thereby legally encumbering said property.

91. PetSmart paid $5,000.00 (five thousand and 00/100 dollars) to release Tulsa Tile Guys' lien on PetSmart's property interest in the PetSmart Store.

92. Tulsa Tile Guys assigned to PetSmart $5,000.00 of any and all of its claims it might have against Dancor, and PetSmart is entitled to recover said sum from Dancor.

93. Pursuant to 12 O.S. § 936, PetSmart is entitled to a reasonable attorney fee for PetSmart's prosecution of the foregoing claim that it has been assigned by Tulsa Tile Guys.

### COUNT XI- OPEN ACCOUNT/ UNJUST ENRICHMENT- ELLIOTT

94. Plaintiff incorporates by reference paragraphs 1-94.

95. Elliott Electric Supply, Inc. ("Elliott") supplied valuable electrical supplies for Dancor's use in construction of the PetSmart store.

96. Dancor accepted the electrical supplies provided by Elliott but did not pay Elliott for the said materials and established an open account with Elliott, despite the fact that Dancor had received payments from PetSmart to be used for the purpose of paying Elliott and other such suppliers.

97. Because of the open account established by Dancor's failure to pay for said materials, Elliott filed a materialmen's lien on the PetSmart property at issue for the unpaid fees it was due from Dancor, thereby legally encumbering said property.

98. PetSmart paid Elliott $16,999.68 to release Elliott's lien on PetSmart's property interest in the PetSmart Store.

99. Elliott assigned to PetSmart $16,999.68 of any and all of its claims that it might have against Dancor, and PetSmart is entitled to recover said sum from Dancor. Alternatively, Dancor has been unjustly enriched, by the payments for Elliott it received from PetSmart, but unjustly misappropriated and applied to its own use and enrichment. PetSmart is therefore entitled to recover said sum from Dancor.

100. Pursuant to 12 O.S. § 936, PetSmart is entitled to a reasonable attorney fee for PetSmart's prosecution of the foregoing claim that it has been assigned by Elliott.

### COUNT XII- BREACH OF CONTRACT / OPEN ACCOUNT-SUBCONTRACTORS

101. Plaintiff incorporates by reference paragraphs 1-100.

102. Multiple additional subcontractors entered into Contractor-Subcontractor Agreements with Dancor whereby the subcontractors agreed to furnish labor, material and equipment for the PetSmart store.

103. Dancor accepted the materials provided by the subcontractors, but did not pay some or the entire amount due, despite the fact that Dancor had received payment from PetSmart for the purposes of paying the subcontractors.

104. As a result of the open account caused by Dancor's failure to pay the subcontractors, PetSmart has paid all or part of the amount owed to the subcontractors.

105. The subcontractors have assigned all of part of their respective claims against Dancor.

106. Pursuant to 12 O.S. § 936, PetSmart is entitled to a reasonable attorney fee arising out of the recovery for the open account resulting from Dancor's failure to pay for the amounts owed to unpaid subcontractors.

### COUNT XIII - UNJUST ENRICHMENT

107. Plaintiff incorporates by reference paragraphs 1-106.

108. Dancor has refused to pay numerous of its subcontractors and suppliers for work they duly performed or supplies they contributed to the construction of the PetSmart Store.

109. PetSmart has paid and may continue to pay all or part of the amounts due to Dancor's subcontractors and suppliers for unpaid work and supplies they contributed to the construction of the PetSmart Store, despite the fact that PetSmart has already paid Dancor for the same work and supplies that Dancor was required to have paid to those subcontractors and suppliers, but did not.

110. Dancor has been unjustly enriched, by virtue of the payments for subcontractors and suppliers it received from PetSmart, but unjustly misappropriated and applied to its own use and enrichment.

111. PetSmart is entitled to recover from Dancor all amounts paid and to be paid in the future by PetSmart to Dancor's subcontractors and suppliers.

## PUNITIVE DAMAGES

112. Plaintiff incorporates by reference paragraphs 1-111.

113. Pursuant to 23 O.S. § 9.1(A) and 12 O.S. §2009(G), PetSmart seeks punitive damages from defendants Dancor and Policicchio for the sake of example and by way of punishing said defendants for the fraud they perpetrated against PetSmart (as set out in Count III and Count IV, supra), which was perpetrated with reckless disregard for the rights of PetSmart and/or intentionally perpetrated with malice toward PetSmart.

**WHEREFORE**, Plaintiff PetSmart respectfully requests that this Court enter judgement in its favor and against Dancor Construction, Inc. and Daniel J. Policicchio, Sr.: in an amount as set forth in this Complaint and to be proven at trial; as well as for punitive damages for the sake of example and by way of punishing the defendants for

their fraud; plus an award of Plaintiff's attorney fees pursuant to 12 O.S. § 936; as well as any additional relief to which Plaintiff may show itself to be entitled.

Respectfully submitted,

s/ Robert H. Alexander, Jr.
Robert H. Alexander, Jr., OBA # 197
Robert W. Ivy, OBA #20909

--of the firm--

**The Law Office of**
**Robert H. Alexander, Jr., p.c.**
Cotter Ranch Tower, 18th Floor
100 North Broadway - Post Office Box 868
Oklahoma City, Oklahoma 73101-0868
(405) 232-0803
(405) 232-0519 Fax
alexattys@productlaw.com
**Attorneys for Plaintiff**
**PetSmart, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2018, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to the following registered participants of the Electronic Case Filing System.

John M. Dunn

s/ Robert H. Alexander, Jr.
Robert H. Alexander, Jr.