UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

PETSMART, INC., )
 )
        Plaintiff, )
 )
v. ) Case No. 17-CV-0361-CVE-JFJ
 )
DANCOR CONSTRUCTION, INC. and )
DANIEL J. POLICICCHIO, SR., )
 )
        Defendants. )

## OPINION AND ORDER

On October 22, 2018, the Court entered an opinion and order (Dkt. # 117) finding that default judgment should be entered against defendant Daniel J. Policicchio, Sr. and that plaintiff Petsmart, Inc's (Petsmart) motion for summary judgment against defendant Dancor Construction, Inc. (Dancor) should be granted. The Court determined that the parties should be given an opportunity to submit additional briefing and evidence on the issue of damages. The parties have submitted opening and response briefs on the issue of damages, and the issue is fully briefed. Plaintiff asks the Court to award it compensatory damages in the amount of $800,754 on its fraud and breach of contract claims against Policicchio. Dkt. # 131. Plaintiff seeks the same amount of damages on its fraud claim against Dancor, plus an additional sum of liquidated damages due to Dancor's failure to finish its work on time. Dkt. # 132. Plaintiff seeks punitive damages from Policicchio and Dancor for twice the amount of the actual damages. Defendants respond that the damages sought by plaintiff are excessive, and the maximum amount of damages that should award to plaintiff under a benefit of the bargain theory is $65,135. Dkt. ## 130, 138.

Petsmart filed this case alleging breach of contract and contractual indemnification claims against Dancor. Dkt. # 2. Petsmart alleged that it entered a contract with Dancor for the construction of a new store in Tulsa, Oklahoma and that it agreed to pay Dancor $1,269,397 to build the store. Id. at 2. Petsmart made periodic payments to Dancor, and Dancor was to use this money to pay subcontractors as the work progressed. Id. However, Dancor failed to pay many of the subcontractors, and subcontractors filed liens on the property in amounts in excess of $490,000. Petsmart sought damages caused by Dancor's delay in completing the work and for expenses incurred to have liens released or defend against claims by subcontractors. Id. at 4-6. Petsmart filed an amended complaint (Dkt. # 39) adding Dancor's president, Policicchio, as a party, and adding fraud claims against Dancor and Policicchio.

Defendants largely failed to defend against plaintiff's claims and numerous discovery disputes arose; defendants were sanctioned for their failure to participate in discovery. Dkt. # 92. Plaintiff filed a motion for default judgment against Policicchio and sought compensatory damages in the amount of $928,814.01. This amount was determined by subtracting the amount that could be verified that Dancor paid to subcontractors ($257,782.25) from the amount that Plaintiff paid to Dancor for the purpose of paying subcontractors ($1,186,596.26). Dkt. # 103, at 3. Plaintiff filed a motion for summary judgment (Dkt. # 107) against Dancor as to liability, and Dancor failed to file a response to the motion. The Court entered an opinion and order (Dkt. # 117) granting the motion for default judgment against Policicchio and the motion for summary judgment against Dancor. However, the Court did not have sufficient evidence or argument on the issue of damages, and the parties were directed to file additional briefing as to plaintiff's damages.

The parties are generally in agreement that plaintiff's damages should be determined under a benefit of the bargain theory, but they vastly differ as to how this theory should be applied. Plaintiff argues that damages for fraud and breach of contract should be calculated by subtracting the amount that defendants actually paid subcontractors ($389,626) from the amount that defendants represented that they had paid subcontractors ($969,680). Dkt. # 131, at 1-2; Dkt. # 132, at 1-2. This results in a difference of $584,054. Plaintiff also seeks to recover damages for attorney fees that it incurred in having liens released and defending against claims brought by subcontractors due to defendant's failure to pay subcontractors who performed work at the new Petsmart store. Petsmart has provided a declaration by its attorney, Robert Alexander, Jr., that Petsmart paid $220,700 for attorney fees in state court litigation to have liens released from its property. Policicchio responds that the benefit of the bargain is a completed store, and the damages are the same whether Court is considering plaintiff's breach of contract or fraud claims. Dkt. # 138, at 3. He claims that the completed store cost plaintiff $1,383,576.15 and plaintiff should have paid $1,318,440.29 to Dancor for its work, and this results in damages in the amount of $65,135.86.[1] Id. Policicchio also argues that plaintiff has failed to show that the attorney fees sought by plaintiff are reasonable in the terms of the work performed and the rate charged by counsel. Id. at 6-10.

The Court must determine the damages for plaintiff's breach of contract and fraud claims using the benefit of the bargain doctrine. Under the "benefit of the bargain" doctrine, a plaintiff

---

[1]  Policicchio states that the initial contract price of $1,269,397 should be increased to $1,318,440.29 due to change orders allegedly submitted by Dancor. Dkt. # 130, at 2-3. The Court has reviewed the evidence and the statements for payment submitted by defendants show that the parties adjusted the final payment to $1,318,440.29. Dkt. # 131-6, at 3. The Court will rely on this figure as the final amount owed to Dancor if it had completed the contract under the terms agreed to by the parties.

3

alleging fraud is entitled to recover the difference between "the actual value received and the value the defrauded party would have received had the value been as represented." Bowman v Presley, 212 P.3d 1210, 1218 (Okla. 2009). The same analysis applies when determining contractual damages under the benefit of the bargain doctrine. Smoot v. B & J Restoration Servs. Inc., 279 P.3d 805, 822 (Okla. Civ. App. 2012). The starting point for this analysis is determine what bargain the parties made, and then the Court will determine what amount plaintiff actually paid to obtain the benefit of the bargain. Plaintiff argues that the contract obligated Dancor to pay subcontractors $969,680, but Dancor paid its subcontractors only $389,626. However, plaintiff and Dancor entered a contract for the construction of a Petsmart store, and the payment of subcontractors was simply part of the performance of the contract. The Court finds that the bargain for the purpose of determining plaintiff's damages was the construction of the store, and the parties agreed that Dancor would build a store for $1,269,397. The evidence submitted by plaintiff shows that there were adjustments to the contract, and the final value of the contract was $1,318.440.29. Dkt. # 132-6, at 3. Plaintiff is entitled to damages it incurred to complete construction of the store for any amounts above the adjusted contract price of $1,318,440.29. In a prior opinion and order, the Court found that any undisputed facts stated in plaintiff's motion for summary judgment were deemed confessed, and one of those confessed facts was that plaintiff paid $1,186,596.26 to Dancor as construction progressed. Dkt. # 107, at 3. Plaintiff also stated as an undisputed fact that it paid an additional $196,979.89 to discharge liens filed against plaintiff's property by unpaid subcontractors. Id. at 4. This results in a total payment of $1,383,576.15 by plaintiff to complete construction of the Petsmart store, and this results in damages in the amount of $65,135.86.

Plaintiff seeks an award of damages for attorney fees and costs that it incurred to defend against litigation filed by subcontractors to recover sums that were not paid by Dancor and Policicchio pursuant to subcontracts. Dkt. # 131, at 2; Dkt. # 132, at 2. Policicchio argues that plaintiff has not met its burden to show that the attorney fees were necessary and reasonable under the circumstances, and he asks the Court to either deny attorney fees entirely or significantly reduce the amount of attorney fees awarded to plaintiff. Dkt. # 138, at 4-10. Oklahoma courts have permitted a party to recover attorney fees as damages when "the wrongful acts of the defendant have involved the plaintiff in litigation with others, or have placed him in such relation with other as to make it necessary for him to incur attorney fees to protect his interests . . . ." Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 11 P.3d 162, 181 (Okla. 2000). The example provided by the Oklahoma Supreme Court for a situation in which it would be appropriate to award attorney fees as damages was a prior case, Griffin v. Bredouw, 420 P.2d 546 (1966), in which the purchasers of a home were required to defend against a lien foreclosure suit when the seller of the home failed to pay a subcontractor for work performed prior to the sale. Id. Defendants have conceded by default or by failing to respond to plaintiff's motion for summary judgment that defendants failed to pay subcontractors and that plaintiff was involved in litigation to discharge the subcontractor's liens against plaintiff's property. Dkt. # 117, at 2. The Court finds that plaintiff necessarily incurred attorney to protect itself from liens filed against its property due to defendants' conduct, and plaintiff should be awarded attorney fees as an element of damages.

Plaintiff seeks attorney fees in the amount of $220,700 and has provided the billing records of its attorney in support of its request for damages. Dkt. # 136. Policicchio argues that the amount of attorney fees incurred by plaintiff is excessive in light of the straightforward nature of the state

5

court cases, and he claims that plaintiff's attorneys spent an excessive amount of time engaging in strategy discussions, file review, and drafting form pleadings. Dkt. # 138, at 8. In awarding attorney fees as damages, the Tenth Circuit has explained that the district court does not need to apply the lodestar method, and the test is whether the amount of attorney fees sought by the plaintiff will fully compensate it for the harm caused by the defendant. Hetronic Int'l, Inc. v. Rempe, 697 F. App'x 589, 590 (10th Cir. 2017).[2] The amount of attorney fees awarded as damages must be reasonable and the amount will not necessarily be the full amount of attorney fees incurred by the plaintiff, but "the amount actually paid is not a bad place start." Id. at 591. The Court has reviewed the billing records submitted by plaintiff and it is possible that the Court would find the fees somewhat excessive if the Court were applying the lodestar method. However, the Court is awarding attorney fees to compensate plaintiff for defendants' conduct that caused plaintiff to retain an attorney to resolve numerous liens and lawsuits. The billing records also establish that defendants' litigation conduct in those state court matters to resolve the subcontractor's liens contributed to the amount of the fees, and defendants should not be rewarded for engaging in conduct to purposefully frustrate what should have been straightforward lawsuits to foreclose liens. The Court will award the full amount of attorney fees of $220,700 to plaintiff as damages on its breach of contract and fraud claims, for total compensatory damages of $285,835.86.

Plaintiff claims that it is entitled to liquidated damages in the amount of $42,500, because the parties' contract requires Dancor to pay a penalty of $500 per day following the 20th day after the substantial completion date. Dkt. # 132, at 14. James Alley, the witness who testified for Dancor

---

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

at a Fed. R. Civ. P. 30(b)(6) deposition, testified that Dancor did not substantially complete its work until April 18, 2017. Dkt. # 87-1, at 47-48. Plaintiff states that using April 18, 2017 as the date to calculate liquidated damages results in 105 days for the accrual of liquidated damages, resulting in an award of liquidated damages of $42,500.[3] However, plaintiff's calculation of liquidated damages relies on a date of January 3, 2017 as the date on which liquidated damages began to accrue, because the certificate of substantial completion was allegedly issued on that date. The deposition testimony cited by plaintiff in support of this assertion does not actually establish that the substantial completion certificate was issued on January 3, 2017, and plaintiff has not submitted the certificate of substantial completion as evidence. Dkt. # 87-1, at 47-48; Dkt. # 132, at 14-15. The 20th date after the substantial completion date of December 26, 2016 was January 15, 2017, and the Court will use January 15, 2017 as the starting point to calculate liquidated damages. See Dkt. # 39-1, at 2 (parties' contract provides for December 26, 2016 as the date of substantial completion). Relying on a date of January 15, 2017, this results in a total of 93 days between January 15 and April 18, 2017, for an award of liquidated damages of $46,500.

Dancor argues that a contractual provision imposing liquidated damages as a penalty for non-performance is void under OKLA. STAT. tit. 15, § 213. In this case, the contract specifically states that:

> For each day following the twentieth day (20th) day after the Substantial Completion Date that Contractor fails to complete all items in the Punch List in their entirety, the Contractor shall be obligated to pay Client the sum of Five Hundred Dollars ($500.00) per day as reasonable liquidated damages, and not as a penalty ("Liquidated Damages"), to reimburse Client for the additional administration

---

[3] The Court notes that liquidated damages for 105 days would result in award of $52,500 (105 x 500 = 52,500).

> required of its personnel and impaired or lost business opportunities caused by Contractor's delay.

Dkt. # 39-1, at 4. The Oklahoma Supreme Court has provided the following factors to distinguish between a valid liquidated damages provision and an unenforceable penalty provision: 1) the injury caused by the breach must be difficult or impossible to estimate accurately; 2) the parties must intend to provide for damages rather than for a penalty; 3) the sum stipulated must be a reasonable pre-breach estimate of the probable loss. <u>Sun Ridge Investors, Ltd. v. Parker</u>, 956 P.2d 876, 878 (Okla. 1998). In this case, the parties specifically agreed that the $500 per day liquidated damages was not a penalty for non-performance, but the amount was intended to reimburse plaintiff for lost business opportunities caused by Dancor's failure to complete its work. This type of damages is difficult to prove or estimate and it was reasonable for the parties to agree on a set value of $500 per day to compensate plaintiff for loss caused by Dancor's delay. The Court does not find that the liquidated damages provision in the contract is unenforceable under § 213, and the Court will award plaintiff liquidated damages in the amount of $46,500.

Finally, plaintiff seeks punitive damages for up to twice the amount of actual damages it receives, because the undisputed facts concerning defendants' actions show that they acted intentionally and with malice toward plaintiff. Dkt. # 132, at 2-3. In the alternative, plaintiff requests punitive damages in an amount up the award of actual damages, because defendants acted with reckless disregard for the rights of others. <u>Id.</u> at 3. Under Okla. Stat. tit. 23, § 9.1, the following factors must be considered in awarding punitive damages:

1. The seriousness of the hazard to the public arising from the defendant's misconduct;

2. The profitability of the misconduct to the defendant;

3. The duration of the misconduct and any concealment of it;

4. The degree of the defendant's awareness of the hazard and of its excessiveness;

5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;

6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and

7. The financial condition of the defendant.

The Court has reviewed these factors and does not find that punitive damages should be awarded to plaintiff. The general public was not harmed by defendants' conduct and defendants did not profit from their misconduct. Instead, defendants misappropriated payments that should have gone to subcontractors because they were have financial difficulties, and Dancor states that it has since entered an assignment for the benefit of creditors after being unable to pay its liabilities. Dkt. # 130, at 10. There is no doubt that defendants made intentional misrepresentations to plaintiff about their failure to pay subcontractors, but this merely establishes that defendants committed fraud. Defendants did not receive a financial windfall from their misconduct and plaintiff has presented no evidence that defendants would be able to pay an award of punitive damages. The Court declines to award punitive damages to plaintiff on its fraud claim against defendants, because punitive damages would not tend to deter future misconduct of defendants or others and there is no need to protect the general public from similar behavior by defendants.

**IT IS THEREFORE ORDERED** that plaintiff is awarded compensatory damages in the amount of $285,835.86 against Policicchio and Dancor, and liquidated damages in the amount of $46,500 against Dancor. A separate judgment is entered herewith.

**DATED** this 31st day of January, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE